IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

YUVONKA LEWIS,

        Plaintiff,

v.                                                            Civil Action No. 3:13cv721-JAG

RICHMOND CITY SHERIFF'S OFFICE and
C.T. WOODY, JR.,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's motion to dismiss the amended complaint. (Dk. No. 9.) The amended complaint alleges violations of the free speech rights of the plaintiff and an unnamed third party. It also attempts to assert a violation of the plaintiff's Fourteenth Amendment liberty interests.

The Court will GRANT the defendant's Motion to Dismiss. The plaintiff has not engaged in protected speech, so her personal First Amendment claim fails. She lacks standing to enforce the rights of unnamed third parties, so her First Amendment claim on behalf of others fails. Lastly, her liberty interest claim fails because the defendant has not publicized harmful information about her nor did he make any harmful comments in conjunction with her termination.

### I. Statement of Facts and Scope of Review

In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, but does not have to do the same with her legal conclusions. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). The Court, however, need not accept bare-bones

factual conclusions. The complainant must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009).

Viewed under this standard, the Amended Complaint alleges the following facts:

The plaintiff, Yuvonka Lewis, worked as a deputy sheriff in the office of Richmond City Sheriff C.T. Woody, the defendant. (Dk. No. 8 at ¶ 6.) In September 2011, a local newspaper, the Richmond Times-Dispatch, began publishing a series of articles detailing nepotism in Sheriff Woody's practice of hiring family members. (Dk. No. 8 at ¶ 11.) Convinced that the information in the articles had come from within the Sheriff's Office, Woody began an investigation to find the leak. (Dk. No. 8 at ¶ 24.) As part of the investigation, Sheriff Woody interviewed Lewis about her potential involvement. (Dk. No. 8 at ¶ 28.) During her interview, Lewis repeatedly denied the allegations, going so far as to take a polygraph examination. (Dk. No. 8 at ¶ 32.) Several weeks after her interview, Woody sent Lewis, an at-will employee, a letter firing her. (Dk. No. 8 at ¶ 43.) The letter did not describe any specific behavior that had caused Lewis' termination, instead referring to a generic violation of "SOP 310." (Dk. No. 8 at ¶ 43.)

Lewis filed a charge of discrimination with the EEOC alleging wrongful termination. (Dk. No. 8 at ¶ 50.) During the investigation, the EEOC asked Woody to provide a list of his reasons for firing Lewis. (Dk. No. 8 at ¶ 51.) Woody's subsequent response contained several accusations of dishonesty. (Dk. No. 8 at ¶ 51.) The EEOC closed the investigation and gave Lewis a right to sue letter. Lewis eventually chose not to pursue a claim under Title VII, and,

instead, brought this case. Woody's response to the charge of discrimination forms the basis of the plaintiff's liberty interest claim.

## II. Discussion

### A. Count I: First Amendment Retaliation

*1. Personal First Amendment Claim*

Public employees do not shed their First Amendment rights by virtue of their employment with the government. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684 (1983). As private citizens, they may make public statements about matters of public interest, without fear of retaliation. "At the most basic level, a public employer may not fire an employee simply because the employee spoke out publicly, whether the speech occurs at a meeting of the local governing body, in a letter to the editor, or on a street corner." *Silverman v. Town of Blackstone, VA*, 843 F. Supp. 2d 628, 633 (E.D. Va. 2012)

Before a public employee can assert a retaliation claim under the First Amendment, however, she must have exercised her right of free speech. *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993). Lewis says she never spoke to any reporters, and that some other unidentified person leaked the information. Essentially, she asks the Court to hold Woody liable because he fired her for someone else's public speech. The burden of showing that the First Amendment protects her speech falls on the plaintiff. *Bland v. Roberts*, 730 F.3d 368, 373-74, 386 (4th Cir. 2013). Unless the plaintiff specifically alleges that some sort of "expressive activity" occurred, the protections of the First Amendment do not apply. *Smith v. Frye*, 488 F.3d 263, 266 (4th Cir. 2007).

In *Frye*, the defendant, a county clerk, fired the plaintiff because he thought she planned to campaign for her son, the defendant's opponent in an upcoming election. *Id.* at 265-66. In

upholding the district court's dismissal of her First Amendment retaliation claim, the Fourth Circuit held that "Ms. Smith's claim failed because she had not spoken or expressed herself in any way. We find no error in the district court's analysis on this issue. . . ." *Id.* at 267. The court refused to recognize a cause of action under the First Amendment for speech that has not occurred. *Id.*

Lewis says she did not talk to the newspaper. In fact, she does not allege that she engaged in any speech. Consequently, she cannot bring a First Amendment retaliation claim. It does not matter that Woody fired Lewis because he thought she leaked information to the press. Merely intending to retaliate against an employee for exercising her First Amendment rights, on its own, does not establish a constitutional violation in the absence of protected speech. *See e.g. Waters v. Churchill*, 511 U.S. 661, 679, 114 S.Ct. 1878 (1994) (noting that the Court had "never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information"). A First Amendment retaliation claim requires proof that the plaintiff exercised her Constitutional right to free speech, something Lewis admittedly did not do.

Decisions from other circuits strongly support the Court's ruling in this case. Four other Circuits have addressed the specific question raised by Lewis' claim. They have unanimously held that a plaintiff cannot bring a personal First Amendment claim based on speech she did not make, even if the defendant falsely attributed it to her. *See Wasson v. Sonoma Cty. Junior Coll.*, 203 F.3d 659, 663 (9th Cir. 2000) (holding that the plaintiff does not have a valid First Amendment retaliation claim where her employer fired her for inflammatory letters she denied writing); *Jones v. Collins*, 132 F.3d 1048, 1055 (5th Cir. 1998) (finding that the plaintiff did not have standing to raise a First Amendment claim because she denied making the statements that

caused her demotion); *Fogarty v. Boyles*, 121 F.3d 886, 891 (3d Cir. 1997) (finding that "the absence of speech – in fact, its explicit disclaimer by plaintiff – is fatal to the plaintiff's claim"); *Barkoo v. Melby*, 901 F.2d 613, 619 (7th Cir. 1990) (rejecting the plaintiff's retaliation claim because "the speech at issue admittedly never occurred").

Sound reasons underlie this rule. If the Court allowed the plaintiff's claim to go forward, it would open the doors for any disgruntled employee to come forward and claim retaliation based on someone else's public gripes. To resolve these claims, courts would have to determine a number of facts unrelated to the fired employee. For instance, did someone else speak on a matter of public interest? If so, did the employer take umbrage at the other person's speech? If so, did the employer somehow attribute the speech to the plaintiff? If so, did the speech lead to some sort of adverse employment action against the plaintiff? Issues of intent are difficult enough in First Amendment cases, without forcing courts and litigants to sort through all sorts of additional hypothetical questions about an employer's state of mind.

Accordingly, the Court DISMISSES Lewis' personal First Amendment claim.

2.  *Third Party First Amendment Claim*

In addition to her personal First Amendment claim, Lewis also asserts a First Amendment claim on behalf of the unnamed individual whose speech Woody wrongly attributed to Lewis. The Amended Complaint tells the Court only that, at some point, the third party talked with someone outside the Sheriff's Office, with word eventually reaching the newspaper. The Court does not know, and the Amended Complaint does not illuminate, any further information about this unknown public speaker. For instance, the Court does not know what the speaker actually said, to whom the speaker said it, whether the speaker works for the Sheriff, or even whether the

Sheriff knows the speaker's identity. In fact, neither the Court nor Lewis even knows the speaker's gender.

This lack of information is relevant because several "prudential considerations limit the challenges courts are willing to hear." *Secy. of State of Md. v. Jos. H. Munson Co., Inc.*, 467 U.S. 947, 955, 104 S.Ct. 2839 (1984). One of these requires the plaintiff to "assert his own legal rights and interests." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197 (1975)) (internal quotations omitted). This generally prevents parties from asserting claims on behalf of a third party. In order to overcome this general rule, and bring a claim on behalf of a third party, the plaintiff must demonstrate: "(1) an injury-in fact; (2) a close relationship between herself and the person whose right she seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests." *Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 215 (4th Cir. 2002) (citing *Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S.Ct. 1364 (1991)). Lewis cannot meet the second or third requirements of this test.

First, Lewis has presented absolutely no evidence that she has a close relationship with the anonymous leaker. Showing a close relationship requires proof of a concrete relationship between the plaintiff and the third party. Assertions of an amorphous, theoretical relationship do not suffice. In order to grant third party standing, the Court must clearly define the relationship between the plaintiff and the third party, instead of resorting to mere conjecture. *See Powers*, 499 U.S. at 415 (allowing a criminal defendant to challenge a prosecutor's race-based exclusion of a juror at his trial); *Singleton Wulff*, 428 U.S. 106, 114-15, 96 S.Ct. 2868 (1976) (holding that an existing doctor-patient relationship satisfies the close relationship prong); *but see Kowalski v. Tesmer*, 543 U.S. 125, 131, 125 S.Ct. 564 (2004) (finding that attorneys may not bring claims based on a hypothetical, future attorney-client relationship). This ensures that "the [plaintiff] is

fully, or very nearly, as effective a proponent of the [challenged] right" as the third party. *Singleton*, 428 U.S. at 115.

As stated above, Lewis does not know the identity of the third party on whose behalf she sues. She claims that the third party must have worked in the Sheriff's Office, but she gives no factual basis for this claim; it is simply an educated guess that the source of the information works for Woody. Woody employs nearly 500 people in his office. Even if the anonymous third party does work in the Sheriff's Office, Lewis very well may not have ever met or even interacted with the anonymous speaker. Lewis' hypothetical relationship with the speaker does not amount to a "close" one for the purposes of third party standing.

Nor can Lewis establish the third element necessary for third-party standing: that the third party suffers a hindrance that prevents him from asserting his own claim. In this case, the only possible hindrance could arise from the speaker's fear of losing his job in retaliation for speaking publicly, but the Amended Complaint does not even say if the third party works for the Sheriff. For all the Court knows, the Times-Dispatch received the information from a disgruntled relative of Woody's, angry because he did *not* get a job in the Sheriff's Office. Ironically, without more detailed information, allowing Lewis to raise a third party claim could also run counter to the anonymous third party's interests by increasing the likelihood of revealing his identity. *See ACLU v. Holder*, 652 F.Supp.2d 654, 668 n. 8 (E.D. Va. 2009) (noting that allowing third party standing may run against the third party's wish to remain anonymous). Because the Court cannot determine whether a hindrance prevents the anonymous party from asserting his rights, Lewis lacks third party standing.

Lewis does not meet the requirements for third party standing, and the Court DISMISSES her claim.

## B. Liberty Interest Claim

Finally, Lewis argues that Sheriff Woody's response to her charge of discrimination violated her Fourteenth Amendment liberty interests.[1] Public employees possess liberty interests in their "freedom to take advantage of other employment opportunities." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701 (1972)) (internal quotations omitted). A public employer deprives an employee of a cognizable liberty interest by making statements in conjunction with the employee's termination that seriously harm the employee's reputation in the broader community. *Roth*, 408 U.S. at 573. To show a violation of her liberty interest, Lewis must show that the defendant's statements: "(1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination; and (4) were false." *Sciolino*, 480 F.3d at 646 (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n. 5 (4th Cir. 1988)).

Lewis' claim fails because she cannot meet the second or third elements of the *Roth* test. As to the second element, Lewis has not shown that Woody made public any negative information about her. Proving the second element requires "more than the 'mere presence' of stigmatizing charges." *Id.* at 649. The plaintiff must show "a likelihood that prospective employers ... or the public at large" will find out about the damaging information. *Id.* at 650. The EEOC's regulations ensure that the information in her agency file remains confidential. 29

---

[1] As an at-will employee, Lewis does not have a property interest in her job at the Sheriff's Office. While deprivations of both liberty and property interests derive from the protections of the Due Process clause, they are distinct claims. Contrary to the defendant's contention, a valid liberty interest claim does not require the existence of a protected property interest. *See Sciolino v. City of Newport News, Va.*, 480 F.3d, 642, 645 (4th Cir. 2007) (finding that a probationary employee has a liberty interest despite lacking a property interest in his city employment).

C.F.R. § 1601.22 ("Neither a charge, nor information obtained during the investigation of a charge ... shall be made matters of public information by the Commission"). In other words, Woody's response will never see the light of day.[2] Even without the EEOC's confidentiality regulation, employers would rarely, if ever, contact the EEOC for information.

The plaintiff tries to circumvent this deficiency by saying that if Woody told the EEOC bad things about her, he will surely respond negatively if potential employers ask about her, ruining her chances for future employment. This claim, however, amounts to nothing more than a hypothetical assertion. A request from the EEOC bears absolutely no resemblance to one from a potential future employer. Woody has to respond to the EEOC, but not to a request from a future employer. For all anyone knows, Woody may never respond to requests for information about Lewis, or he may simply tell future employers that his policy only allows him to provide dates of employment and final salary, or he could even change his tune and say that she was a good employee. Determining Woody's future response to a potential employer would require the Court to answer a hypothetical question. Courts do not address hypothetical issues, and nothing is more hypothetical than a prediction of future statements.

Lewis' claim also fails to meet *Roth's* third prong: that the employer made the negative statements in conjunction with the plaintiff's termination. To satisfy *Roth*, the "stigmatizing remarks must be 'made in the course of a discharge or significant demotion.'" *Ridpath v. Bd. of Gov. Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006) (quoting *Stone v. Univ. Med. Sys. Corp.*, 855 F.2d 167, 172 n. 5 (4th Cir. 1988)). The plaintiff must establish a "concurrent, temporal link between the defamation and the dismissal," *Hamilton v. Mayor & City Council of Baltimore*, 807

---

[2] Ironically, the plaintiff spells out Woody's statement in her Amended Complaint. The information in the Court file is infinitely more likely to reach the public than Woody's EEOC filing.

9

F.Supp.2d 331, 357 (D.Md. 2011) (internal quotations omitted), otherwise the plaintiff only has a claim for defamation. *See Ridpath*, 447 F.3d at 309 n. 16 (citing *Paul v. Davis*, 424 U.S. 693, 709-10, 96 S.Ct. 1155 (1976) (holding that liberty interests are only implicated by statements made in conjunction with an action negatively affecting the plaintiff's employment)).

In this case, Lewis herself caused Woody to make his negative comments to the EEOC. Lewis filed a charge with the EEOC alleging that Woody discriminated against her. The EEOC required a response from Woody detailing his reasons for firing Lewis. Woody had no choice but to respond to the EEOC's inquiry, 29 C.F.R. § 1601.22, and, to no one's surprise, he responded with negative information about Lewis. Lewis now argues that the negative information in Woody's response violated her liberty interest. In other words, the plaintiff threw the first blow in a fight and now complains that her opponent struck back.

Woody did not make any negative remarks when he fired Lewis. He only commented when challenged by Lewis. Having challenged Woody's action, Lewis should not have expected Woody to say that she performed admirably. After all, he did fire her. Her own actions invited a response. The response did not come in the course of Lewis' termination, precluding her from making a liberty interest claim.

Since the Sheriff did not make public any information about the plaintiff and did not make any negative remarks in conjunction with Lewis' termination, the Court DISMISSES her liberty interest claim.

## III. Conclusion

For the reasons set forth above, the Court DISMISSES all counts in the plaintiff's second amended complaint, and GRANTS the defendant's Motion to Dismiss. (Dk. No. 9.)

The Court will enter an appropriate order.

Date: 5/27/14
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge